915 F.2d 1575
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UTICA MUTUAL INSURANCE CO., Plaintiff-Appellant,
v.
GREAT LAKES COAL COMPANY and Lafayette Bank & Trust Company,
Defendants-Appellees.
 No. 89-1517.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 13, 1990.
Decided Oct. 5, 1990.
 
 Before RIPPLE and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Utica Mutual Insurance Company brought this action to enforce a letter of credit which partially secured a reclamation bond. The district court found that the letter had expired and was no longer enforceable. We affirm.
 
 I. BACKGROUND
 
 2
 Great Lakes Coal Company (Great Lakes) was obligated to reclaim any land it disrupted by its mining operations. Underwriters Safety & Claims, Inc. (Underwriters) wrote reclamation bonds for the coal industry on behalf of plaintiff Utica Mutual Insurance Co. (Utica). Great Lakes sought to obtain a bond from Utica through Underwriters to guarantee reclamation to the Indiana Department of Natural Resources. Utica agreed to write the bond in the amount of $261,860, but required as collateral a letter of credit in the amount of $100,500. Great Lakes had a banking relationship with defendant Lafayette Bank & Trust Co. (Lafayette) to provide such letters of credit. Lafayette agreed to provide the letter of credit upon return of other letters of credit it had previously issued to the state of Indiana on behalf of Great Lakes. In reliance on Lafayette's promise, Utica issued the bond to Indiana for the benefit of Great Lakes on November 10, 1983.
 
 
 3
 On February 10, 1984 and March 7, 1984, Underwriters by letter requested that Lafayette issue the promised $100,500 letter of credit. On both occasions Underwriters attached to its letter a sample letter of credit with wording it claimed Utica required. Prior to March 7 Underwriters discovered Lafayette was a state bank rather than a national bank; Utica usually accepted letters of credit only from national banks. In the March 7 letter, Underwriters informed Lafayette that letters of credit from state banks needed to be accompanied by two additional items: an audited financial statement, and a letter from the bank's attorney verifying that the terms of the letter of credit did not violate state banking laws. On March 12, 1984, Lafayette issued Letter of Credit No. 128, naming Utica as the beneficiary. The letter was effective immediately. Although it listed an expiration date of March 12, 1985, it also contained an automatic renewal clause that provided for the letter to renew each year unless Lafayette provided advance notice of cancellation.
 
 
 4
 Underwriters in a March 28, 1984 letter advised Lafayette that the letter of credit should list the state of Indiana as beneficiary rather than Utica. Underwriters also reminded Lafayette that it still needed a copy of the audited year-end financial statements of the bank along with a letter from Lafayette's counsel verifying the bank's compliance with state laws. On April 4, 1984, Lafayette attorney Thomas Williams wrote Utica that the letter of credit did not comply with state banking laws because of the automatic renewal provision. Williams cited Indiana Code Sec. 28-1-11-3.1, which provides that letters of credit "must state a specific expiration date." He attached to the letter a proposed letter of credit with three changes--the automatic renewal clause was deleted, the state of Indiana was listed as the beneficiary, and a reference to the New York Uniform Commercial Code was changed to the Indiana UCC.
 
 
 5
 Patricia S. Lee, manager of Underwriters' bond department, responded in an April 25, 1984 letter to Lafayette. Attached to the letter was another proposed letter of credit with "revised wording." Although this letter of credit again contained an automatic renewal clause, Lee's cover letter was to the contrary:
 
 
 6
 The attached wording provides more acceptable terminology than that previously proposed by counsel for the bank. We are aware that the automatic renewal of the letter is not acceptable and we will accept the letter for a one year period. The remaining terms of the letter are to remain unchanged.
 
 
 7
 Upon receipt of the revised letter we will return the letters currently in our possession. If desired you may add a statement that the new Letter of Credit does not become operative until the others are returned to the bank.
 
 
 8
 No further correspondence occurred between Utica and Lafayette until the summer of 1986. Some time in late 1985 or early 1986, Great Lakes defaulted on some of its obligations and Utica became liable on its surety bond. On July 16, 1986, Utica demanded payment from Lafayette by presenting a sight draft in the amount of $100,500 and referencing Letter of Credit No. 128. Lafayette refused to honor Utica's sight draft, and Utica sued.
 
 
 9
 In a thorough opinion the district court found that Letter of Credit No. 128 was valid but expired in 1985 because Utica through Underwriters consented to the modification deleting the automatic renewal period. In the alternative, the district court concluded that even if the letter was invalid because of the renewal period, a valid letter of credit with a one-year limitation was formed on April 25 by Lee's letter consenting to a letter of credit with those terms. The court entered judgment in favor of Lafayette and against Utica on October 12, 1988, and Utica timely appealed.
 
 II. ANALYSIS
 
 10
 Utica first argues that the original letter of credit was valid despite its automatic renewal provision. Then it contends the automatic renewal provision remained a part of the letter of credit despite an agreement to the contrary. Third it argues that the April 25 letter could not have created a new letter of credit. Finally, Utica contends Lafayette is estopped from denying the validity of the letter of credit by its promise to provide the letter.
 
 
 11
 The first question before the district court was whether the original letter of credit was valid despite its automatic renewal provision that seems to be in conflict with Indiana Code Sec. 28-1-11-3.1(a). The district court circumvented this issue, holding that if the original letter was valid it was modified to include an expiration date, and that if it was not valid, the letter from Patricia Lee created a new letter of credit with a set expiration date.
 
 
 12
 We also will not attempt to interpret Indiana Code Sec. 28-1-11-3.1(a) in the absence of any guidance from Indiana courts, because interpreting that section is not necessary to our resolution of this case. Neither party argues that the original letter of credit was invalid because of the automatic renewal clause. Obviously, if the original letter of credit was invalid, Utica could not win, because Utica argues that no later communications between the parties were capable of creating a valid letter of credit.
 
 
 13
 Even assuming the original letter of credit was valid, we need address only one issue to resolve this case for Lafayette--was the original letter modified to include a definite expiration date? Indiana Code 26-1-5-106(2) allows modification of letters of credit if the beneficiary consents. We affirm the district court because we agree the original letter was modified by the parties' agreement to an expiration date of March 12, 1985.[1]
 
 
 14
 We will reverse factual findings of the district court only if we find them to be clearly erroneous. Fed.R.Civ.P. 52(a); Farm King Supply Inc. v. Edward D. Jones & Co., 884 F.2d 288, 293 n. 6 (7th Cir.1989). Utica argues that the district court's conclusion that Utica consented to a modified letter of credit is subject to de novo review. We disagree. The district court's conclusion of law No. 14 states that "irrevocable letters of credit may be modified or revoked with the consent of the beneficiary and a new letter of credit need not be issued." But the district court's determination that Utica consented to the modification, although imprecisely listed as conclusions of law Nos. 23 and 24, were applications of factual findings to the law. The court's conclusions were based on weighing the evidence of the party's intentions, and therefore are entitled to deference.[2] As the district court clarified in its order denying Utica's motion to alter or amend the judgment, "Contrary to the plaintiff's assertion, the Court did not decide the issues as a matter of law, but rather heard the evidence at full trial and rendered its findings in accordance with the law.... The plaintiff cannot now challenge such factual determinations...." See Farm King Supply, supra, 884 F.2d at 293 n. 6 (holding that issue of whether parties agreed, similar to "meeting of minds" in contract cases, turns on evidence heard at trial and is reviewed under clearly erroneous standard). As this court held in A/S Apothekernes Laboratorium v. I.M.C. Chemical, 873 F.2d 155, 157 (7th Cir.1989):
 
 
 15
 Courts look to all the circumstances surrounding the negotiations, including the actions of the principals both during and after, to determine what the parties intended.... The intent of the parties in circumstances such as these is a question of fact, and we will not set aside the fact finder's determination on this issue unless it is clearly erroneous.
 
 
 16
 The district court's determination that Utica consented to a modification of the letter of credit providing for a definite expiration date was not clearly erroneous. The district court made this ruling after hearing "the plaintiff's agent testify several times in Court that she accepted the modification," and also concluded that "the documentary evidence supports this factual finding as well." The evidence supports these findings by the district court.
 
 
 17
 The original letter of credit issued by Lafayette on March 12, 1984 was valid and accepted by Utica. An employee of Underwriters wrote to Lafayette in a March 28 letter "Thank you very much for sending the irrevocable Letter of Credit Number 128...." The letter went on to ask that the letter be amended by changing the beneficiary from Great Lakes to the state of Indiana. The letter also asked for an audited financial statement and the letter of compliance from Lafayette's legal counsel. The district court found, looking at all the circumstances, that by this time each side clearly believed it had an agreement for a letter of credit. Neither side contests the letter of credit's validity at this point.
 
 
 18
 On April 4 Lafayette's legal counsel, Thomas Williams, responded. Attached to his letter was a new letter of credit that changed the beneficiary and made another immaterial change. His cover letter pointed out the problem with the automatic renewal clause, and the attached letter of credit deleted that clause. The response of Utica to these final modifications was clear.
 
 
 19
 There is no dispute that Patricia Lee, the manager of Underwriters' bond department, was acting as Utica's agent during negotiations with Lafayette. Her letter to Lafayette and her testimony strongly support the district court's factual conclusions.
 
 
 20
 Lee's April 25 letter in response to Lafayette's April 4 letter is clear: "We are aware that the automatic renewal of the Letter of Credit is not acceptable, and we will accept the letter for a one-year period." Lee's trial testimony was unequivocal:
 
 
 21
 Q. And as I understand, as of April 25, 1984, it was clearly the understanding that the automatic renewal provision would not apply to this transaction?
 
 
 22
 A. That's correct, we agreed to accept a Letter of Credit with a one-year period stated in it.
 
 
 23
 Q. And with no automatic renewal provision; correct?
 
 
 24
 A. That's correct.
 
 
 25
 Q. So even though there is a form attached to that letter, it contains once again an automatic renewal provision, it was clearly understood between the parties at that point that there would be no automatic renewal provision?
 
 
 26
 A. That's correct.
 
 
 27
 Lee's testimony shows that Utica consented to the modification of the letter of credit deleting the automatic renewal clause. See Atari, Inc. v. Harris Trust and Sav. Bank, 599 F.Supp. 592, 596 (N.D.Ill.1984). Utica argues that no modification of the agreement was valid unless in writing and signed by the issuer. See Indiana Code 26-1-5-104 ("A modification of the terms of a credit or confirmation must be signed by the issuer or confirming bank.") The district court pointed out that Utica cited no cases supporting the view that the issuing bank needed to provide a completely new letter of credit in order to modify an existing letter of credit. In any event, the April 3 letter from Williams did include a new letter of credit signed by the issuer, and Utica consented to the modification. This is consistent with Indiana Code 26-1-5-106(2) ("Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.") Williams' April 3 letter contained a signed letter of credit containing a modification, and Utica consented to that modification.
 
 
 28
 Utica also contends Lafayette should be estopped from contesting the validity of the letter of credit because it promised to provide the letter. This argument misses the mark; Lafayette has never argued that it did not provide a valid letter of credit. It merely contends the letter expired on March 12, 1985, prior to the time Utica attempted to draw on it.
 
 
 29
 We agree with the district court that Utica accepted the letter of credit's modification deleting the automatic renewal clause. Without the clause, the letter of credit expired on March 12, 1985. Utica's attempt to draw on the letter of credit in 1986 was untimely, and the district court correctly granted judgment to Lafayette.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 We therefore also need not reach the question of whether the April 25 letter from Lee to Lafayette was capable of creating a new letter of credit
 
 
 [2]
 As with ordinary contracts, the intent of the parties is controlling. See Hawkland, Uniform Commercial Code Series, Article 5, Letters of Credit, Sec. 5-102:09, Applicability of Other Rules of Law: "Since many of the provisions of Article 5 can be varied by the agreement of the parties, the courts should first consider the agreement of the parties to determine the rights and obligations of the parties."